Our first item of business this morning is a motion, gentlemen, so you can be seated. And I think the court would acknowledge Judge Schall for this motion. Thank you, Chief. I appreciate the courtesies. Yes, I do have a motion to make, and it's a piece of happy business. I'm moving the admission of my law clerk to the bar of the court. And I move the admission of Brian N. Gross, who is a member of the bar in good standing of the highest courts of Virginia and the District of Columbia. I have knowledge of his credentials and am satisfied that he possesses the necessary qualifications. These are sort of the official words that we have to state, but I would just add one tiny gloss. Brian has been invaluable to me this year. He's done an excellent job, and I know that he will be a fine addition to the bar of the court if my motion is granted. Thank you. We have a lot of people from Virginia and D.C. Do we need another one? We'll take one more. Okay, we'll grant this one. The oath will come from our circuit executive. Please raise your right hand. Do you swear or affirm that you will report yourself an attorney and consult with the court? I'll frankly, according to the law, that you will support the Constitution of the United States of America. Thank you. Congratulations. You are the bar of the United States Court of Appeals. Welcome, Brian, and thank you for your service to the court. Our first case this morning will be Tip Top Construction v. The Coastal Service. May it please the court. This case involves the recovery of proposal preparation costs that were incurred in pricing during negotiations of a government-issued change order. Unfortunately, the government rejected all of the proposal preparation costs at the administrative level and at the board. They rejected those involving pricing. These positions are in direct conflict with this court's precedent in Bill Strong, which says that these costs of proposal preparation win as part of a negotiation in order to achieve a settlement or agreement. You're saying, in that sense, they're part of the contract administration process. Yes, it absolutely was. Let me ask you, if I could, Mr. Morgan, I want to make sure I understand, what is the present amount of your claim? In other words, what's at issue before us? The present amount of the claim exactly is somewhere around $6,000. Okay. That's what remains. Now, what is that comprised of? Is that comprised of the Diaz fees? Yes. And some attorney fees? Yes. Okay. And overhead and profit on the Diaz fees. Okay. And do you have a breakdown of the exact amount that's now at issue? There's something like $3,300 for the Diaz fees, and something like $2,700 for the attorney's fees, and then there's overhead and profit on the consultant fees. Okay. And there's nothing, no fees for Mr., who's the president of the company? Mr. Hollins. No fees for his time? No. Okay. So it's just, it's $3,300 for Diaz, and the rest is for the lawyer. And I guess your position is that the Diaz fees are recoverable because it was up to, he steps out of the picture around the beginning of March, and during that time he was negotiating on the price, and then the lawyer, you say, came in, and his fees are for the period, basically April until the beginning of June? What happened in March was that basically Mr. Hollins took over the negotiations. In April, the government presented a position from their auditor that no proposal preparation costs for a change order were recoverable. And then at that point, the lawyer came in, presented a legal paper in May. The parties discussed it some more, and then in June, the government came back and said that they rejected that position, and after that, a claim was filed. Now, are you seeking the fees for that May activity? Yes. The May activity basically was still part of the negotiation of whether it seemed... Is it part of the negotiation once, and April 16th, isn't it, 2010, the contracting officer formally informs you that these costs are not going to be part of the equitable adjustment? Actually, what the contracting officer did was he presented the information he had received from his auditor. At this point in time, a reasonable contractor would say, okay, this is a legal issue. If I'm legally right, I should have a lawyer that should explain that, and perhaps they'll change their position. This is part of negotiation, and that's exactly what happened. Well, but at that point, they prohibited your recovery. Not yet. Okay, so now you're moving into a legal phase, aren't you? You're actually challenging the legality of their ruling that they're not going to allow your change order. There was no final ruling at that point, as evidenced by the fact in the contracting officer's declaration. He said that after receiving the legal position and discussing it among themselves, then he decided that he was going to stick with his unreasonable position. So there was no final say by the government until June, something around June 8th. At June 8th, the fees stop. June 18th, a claim is prepared and submitted. So this is all negotiation. That's when a lawyer can actually facilitate something in the process of negotiation by showing that the auditor's position is legally incorrect. You're saying even after a decision's been made, the legal discussion can be part of the negotiation? Absolutely. Absolutely, because this was the obstacle. This was the obstacle, and this is what the parties were trying to negotiate so that they wouldn't go into litigation. This case should never have been in litigation. This case should have been settled. It never was settled. It couldn't be settled, and that's why we're here. Go to one question. There were legal fees incurred after June 8th, but those are not being claimed. That's correct. There were legal fees incurred in looking at the claim and then afterwards in litigating it, but those aren't being claimed. It was only those that were part of the negotiation process. The government's sole argument is based on timing, but as I just described, the facts don't support that. There was no final decision according to the contracting officer until all this had been reviewed. Now, where in the record does the attorney actually communicate with the Postal Service before the filing of the claim? Okay, at 157 in the record is the legal letter that was sent. That letter was sent in May, as evidenced by the legal attorney fee bills, which show that in May that letter was sent. I think that's at 53. I'm sorry, what page did you say? 157 is actually the legal paper that was filed, and I believe it is at… Is there a date on that letter? The date on the letter is… that letter is not dated. That letter was again submitted with the claim, but it had been submitted earlier. Proof of that is to take a look at at 153, because 153 is the time description that shows the letter was sent to the client. That was the letter that was sent to the client, and if you look at page 157 of the record, it shows that a response was received from the Postal Service that was reviewed by counsel. That was the last time that counsel billed any time to that matter. The undated letter, however, is officially part of the record as of the date of the claim, right? Which would suggest that the attorney did not become involved until the date of the claim. That's not reflected in the time descriptions. It shows that the involvement occurred right after the audit letter was received. It was found by the board's fact-finding. The board seems to be telling us the attorney is only part of the process when the claim is filed. Is that binding on us? I don't believe it's binding on you, and I think it's contrary to the facts. This board was basically focused on one thing. Anything having to do with pricing was unallowable, and all of the board's other findings are all based on that. There are make-weight arguments to try to support that position, and it's indefensible. Why wouldn't there have been a date on that letter? That would make this a little easier. It would have made it easier. The record is what it is, but basically that was the record that ended up being before the board. I never thought we were going to reach the point where someone was going to say pricing as part of negotiating a modification was going to be not allowed. Well, but the question is whether this is negotiating a modification or whether it's a claim process after that negotiation is terminated and the parties have gone into a legal dispute. So the question is, where do we draw that line between negotiation and a legal claim process? I think you draw the line at the point where my term fee timesheets show that USPS responded, and that was June 8th. They responded to the legal position, and then after that, then the parties decided to go into a claim mode. You can see no one was going to go... The government's going to tell us that that started much sooner, that they denied your claim, well, at least that April date I gave you. Maybe they will say it's even earlier. Well, if that's a deniable claim, where's the contracting officer's name on it? There was no claim involved here. This was supposed to be something that should have been part of the normal course of negotiations, but you received an unreasonable position from the government that basically obliterated the changes clause from the contract. After that, the board didn't accept that, but the board then imposed this distinction between pricing of a claim and performance-based, which isn't supported by Bill Strong, and that's why we're here. This was a negotiation. This isn't someone setting up a claim for prosecution. It's just not borne out by the facts or logic. Now, going to the consultant side of it, the government's big position on the consultant was, look at those timesheets, those timesheets don't specify. Well, that's true, but if you look at the entire record, the consultant and Mr. Hollins submitted declarations that both provided the descriptions and said that the consultant only worked on this part of the project for that period of time, between October 19th and March. In the brief on pages 17 and 18, I track it basically to request from the government, disputes with the government about pricing. It's there, that's what happened. The suggestion that the consultant was working on something else is pure speculation. The generic descriptions on the timesheets are just that, generic descriptions. They don't prove that he was working on other matters. Second, How do you deal with the board resolving most of these factual questions against you? I'm disputing them. I think the board's factual conclusion here has to be supported by substantial evidence and pure speculation is not substantial evidence. But we are bound to follow them unless There's no substantial evidence. There's no substantial evidence. You're saying, Mr. Gordon, it would be a different case if there was an auditor testimony countering these timesheets and the board had accepted that over the timesheets. But what you're saying is there's just nothing on the other side here. Nothing at all on the other side. In fact, if you look at it in terms of logic, this is a contract to replace an air conditioning system. This air conditioning system has the system. It had to be built. It wasn't even going to be delivered until June. So what is this consultant doing? Everything in logic tells you this is all he did. He kept time. Okay, it isn't perfect proof. But you don't need to have perfect proof. And the same proof was accepted previously. Now, with respect to performance-based work on the claim. And the last point that I think that the government makes is that a prudent businessman would not have spent $6,000 on a $23,000 modification. And this is based strictly on numbers. The government does not contest that the work wasn't done. The requests weren't made. They haven't contested these declarations. And they had the people there that could have said, no, I didn't talk to him that day. No, I didn't have any discussions with him about this. They knew that that had happened. The government should not be raising this kind of argument. Because what it's really saying is it's saying to small businessmen that when you deal with the government, you should expect to lose money on small claims, even if you're required to perform work. Should we hear from Mr. Harrington and save the rest of your rebuttal time? Yes. Okay, thank you. Mr. Harrington? May it please the Court. TIPTOP has been appropriately compensated for the Postal Service's decision to change the refrigerant used in the air conditioning system in Christiansen in the Virgin Islands. TIPTOP has been paid the cost of additional work, the cost for a consultant to coordinate that work, general and administrative overhead, and profits. Substantial evidence supports the Board's decision to deny attorney's fees and additional consultant costs. Now, turning first to the question of the attorney's fees part of the claim, there are two components. There are attorney's fees and there are additional consultant costs. Some of the consultant costs have been paid. Now, TIPTOP didn't actually argue that it was entitled to the attorney's fees in its opening brief. The only reference to attorney's fees came in the prayer for relief on page 26. And it was for that reason that we had a brief discussion of the attorney's fees in our motion. I'd point out that the Court doesn't ordinarily consider arguing... You're not arguing that negotiations over a change clause are disallowed expenses, are you? Negotiations over... No, no, we are not arguing that there's a blanket denial of negotiations... At what point, then, when you have a negotiation ongoing and at the end of it a claim is filed, where do we draw the line that the negotiations have ended and the claim process has begun? Well, I think in Bill Strong, this Court said that that's a difficult line to draw. And it's a difficult line to draw because precisely where that occurs can be challenging to determine on the fact of an individual case. Here, what we have is we have the Board making that sort of a determination. And the question, then, for this Court is whether substantial evidence supports the lines drawn by the Board. Now, what the Board did was it drew two different lines. And I want to be clear, one of those lines didn't have to do per se with negotiations as opposed to claim costs or as opposed to costs that were done performing the contract itself, which is a different category of potential costs that the consultant could have spent his time on. As to the attorney's fees, as the Court noted here... I'm a little concerned in the way this develops because the Board cuts it off at the approval of the equipment change and then says, well, the negotiations about price is irrelevant to that proceeding. It seems to me that the price and the approval of the equipment are somewhat synonymous. And it also seems to me we'd have a real problem if we let the Postal Service always approve the equipment and then cut off the negotiations on the price completely out of the contract administration period. Isn't that a bit unfair, to use a strong word? It's not unfair in this case. And the reason is that the Board found that after October 15th, the evidence that was presented by TIPTOP was simply not sufficient to determine that these were in fact negotiation sorts of costs. If you look at what the... The first time we hear that the contract prohibits recovery of their costs is that April 10th, April 16th, excuse me. That's the first time that they... Up to then, they were very clearly still negotiating the price, right? There were some negotiations concerning price going on before that April 16th date. That's the first time that I see in the record that there's a clear statement, no, these costs, your price proposal is not going to be honored. I agree that that's the first point in the record. And part of the problem here is that the record is sparse. And it's the sparsity of the record that is the basis for the Board... But how do we say that anything before that was not negotiation if that's the first time we hear their price is denied? Let me take a step back, Your Honor. I don't think that the Board said that nothing before April 16th was negotiation. And in fact, before October 15th, it granted the cost. And there were discussions about costs during that period of time as well. So the Board didn't per se say nothing about the discussion of price necessarily is unrecoverable. It allowed a recovery up to October 15th. Now, what did it do between that October 15th period and mid-April? The problem there was the evidence that was supplied by TIPTOP. And let's go back to what that evidence was. The evidence was, first and foremost, the contemporaneous statement by the consultant himself. That would be Mr. Diaz. And Mr. Diaz provided timesheets. These timesheets provided a description and an hour per day. But that description was general. And the description was, and I quote, project management, design, site visits, bid preparation, and review of drawings. That's what he said in his timesheets he was doing. And we cite that it's uniform across his timesheets throughout this October to April time period. But the Board drew the line at, quote, costs after substitute equipment was approved. Yes. That seems to be the idea that the approval date is the cutoff date on negotiations. The approval of the equipment when the costs after that approval and all the negotiations on the price seem to be disregarded. I respectfully submit that that's not actually what the Board was doing and that's not why there was that October 15 cutoff date. The Board allowed, the Board said straight out that the evidence that was submitted was not very good. But before October 15, the Board concluded that the only thing that could have been going on, because the substitute equipment had not been approved, the only thing that could have been going on was work on this change order. But once that substitute equipment was approved, there was no stop order in place. Once that substitute equipment was approved, actual work in getting that equipment, contract work, could be performed. And once contract work could be performed, you have the situation where contract work under the original agreement can be being performed. Contract work under the change order can be being performed. But that's not our issue. The issue is the negotiation over the price that goes on at least until April. But the problem is that only work by Mr. Diaz concerning negotiation over the price is potentially recoverable. If he's doing multiple different things during that time, you have to be able to segregate out what is compensable and what isn't. And the Board found that before October 15, you could do that. And the reason you could do that is the only thing that he could have been doing was work on the change and the price of the change. But then after October 15, that's no longer the case. And you can't tell from the timesheets that he provided what he was working on. And because the context at that point meant that he could be doing any of a number of different things, the Board said, now, in this period, TIPTOP hasn't met their burden of proof to show me what is and is not a compensable cost. It's not a question of whether or not any of the work that he was doing was possibly negotiations. It's a question of whether or not TIPTOP showed what of the work he was doing was negotiations and how much they should be compensated for that work. And it's that failure of proof that makes the difference between the October 15 date and the date that you pointed out where there was a clear dispute that was going on. So the impossibility of telling what is and what is not compensable during that period was the basis for the Board's decision. Shouldn't we err on the side, though, of allowing more negotiation? Doesn't the government profit from that? They want to encourage people to come to them and negotiate, not just file a claim immediately and lawyer up and start the cannons firing back and forth in a war. They want this negotiation. So wouldn't we err on the side of more negotiation and contract administration fees for that process? I'm not in here to tell you that negotiation is a bad thing. That is not our position at all. But what is happening here and what the Board decision is, is not something that says don't negotiate. It's a decision that says if you want to claim costs for these negotiations, show us what those costs really are. Make sure that you are able to tell through the evidence that you submit that these are negotiation costs that are furthering negotiations. There are several things that these costs could have been. They could have been work originally requested by the contract. The time he spent could have been work necessitated by the contract change. It could have been administrative work, such as negotiations. It could have been work related to claim preparation because the record, again, is sparse as to when that sort of preparation work occurred. It could be some other kind of work that is not spelled out. Because the only thing that we have in the description is that he was doing project management, design, site visits, bid preparation, and the review of drawings, none of that is negotiation of the change order. None of that is listed in any of his timesheet. But the board said again, quoting from its decision, once the substitute equipment was approved, nothing remained to be negotiated except price. Well, price is kind of an important thing to negotiate, isn't it? And isn't that recoverable as contract administration? It is potentially recoverable if the requisite showing is made to the board. But the board seems to have cut that off. They aren't talking about inadequate record. They're saying the equipment was approved, game over. I think if you look at other parts of the board decision, the board does make clear that what they are doing is cutting it off, not because it's per se unrecoverable. If you look at appendix page 15, the board says, respondent also argues that appellant has not proved that incurred consultant costs resulting from the change because its evidence lacks sufficient specificity to be accepted as proof. That's exactly what we're talking here. Then it says that under these circumstances, talking about the period before October 15, we will not deny appellant recovery because its evidence of the exact amount of damages is less than perfect. It does that before October 15. Then after October 15, it does not do that. And the reason that it does not do that is because it finds that as of the approval of the substitute equipment, other work can go forward and you can't simply assume at that point that it was contract negotiations and that the plaintiffs have failed to prove what it really was that was going on, what really was being done by Mr. Diaz. Let me ask you, page 17, the board says, the consultant likely was working on other project matters who was incumbent upon appellant to identify hours, etc., spent on the equipment change issue and has not done so. But we do have the Diaz declaration, we have the Hollis declaration, and we have the time sheets, we have the lawyer's records, and it seems that there is evidence submitted, but we don't have any contrary evidence on the other side. Well, the first contrary evidence is the description in the actual contemporaneous records that do not mention anything about negotiation. So there is nothing in his contemporaneous records, Mr. Diaz's contemporaneous records. You said he spent 84-something hours on the negotiations? I don't remember the exact number of hours, Your Honor. It is a substantial amount. I'd say on that that the contracting officer found that it was an unreasonable amount. The board didn't reach that question because it ruled on other grounds, and we submit that the amount that's being sought as negotiation on what's a very simple change is, in fact, unreasonable and excessive and not recoverable for that additional reason. But let me go back to what you were talking about, and that's the Hollis declaration. Mr. Hollis said that, quote, the hours charged by Mr. Diaz on this work from September 2009 until March 2010 were associated with the change since until the change was issued, no work could go forward. He was inferring. He wasn't giving direct evidence about what he knew to be Mr. Diaz's work. He was inferring based on the mistaken assumption, the incorrect belief, that contract work couldn't go forward. No, but I mean, I think that's true what you say there, but look, if you look at the Diaz declaration from paragraphs 8 through basically 12 at 137 through 138, he does talk about what he was doing in connection with the negotiation of the price. He does, and we haven't disputed that it's possible, it's likely, that notwithstanding the description in his contemporaneous timesheet that he was probably doing some work on negotiations in that time period, but how much it is, Mr. Diaz does not say that all contract work was stopped from October 2010. And the amount here at issue was 3,300 for Diaz's work? I think that's roughly correct. Yeah, and the lawyer's 2,700. I think that's roughly correct. What is the present status of the project? I mean, I realize there are work orders issues. Is this whole relationship still in existence? I believe that the, I do not know about the overall job or the indefinite quantity job order contract, whether that is still in play. This particular contract, I'm not certain that it is done, but I am confident that all the work was stopped. Thank you. For these reasons, we respectfully request that the court affirm the court's decision. Thank you, Mr. Harrington. Thank you, Mr. Gordon. You have two and a half minutes. Mr. Harrington's main argument is, he seems to be saying, look, we recognize that negotiation costs are properly recoverable, but it hasn't been demonstrated that these particular costs, namely the Diaz costs and the lawyer's costs, were attributable negotiation, particularly says that there's not documentation supporting the Diaz claim of price negotiations. Okay. With respect to the lawyers, the only thing that the board said about the lawyers was it involved pricing. Look at page 18 of the board's decision. That was the sole reason. It wasn't that they were involved in claims prosecution. It was because it involved pricing. And what about the Diaz, his claims about Diaz, that the records, the timesheet records don't support it. The timesheet record isn't the only evidence in the record. That's the government's problem. The timesheets are what they are. They're not perfect, but they do distinguish between different projects. There's a generic description of all projects, and then Mr. Diaz says what he did. Now, he talked about working with Mr. Morales. He talked about working with Mr. Monca. Both those people said nothing to dispute anything he said in his declaration about what he was doing. The only arguments that they make is that there may have been other work. That is speculation. There was a notice to proceed. That doesn't mean there's other work for Mr. Diaz to do. That also doesn't prove that there was other work. And those declarations specifically say, I did no other work. Almost 100% of my time was charged solely to negotiating this price during this period. And Mr. Hollins, the government quotes Mr. Hollins as saying, he quotes one sentence, but the next sentence goes on to say, all I did, all he worked on was, on this project, was in negotiating this change order. Okay, so basically, I think the record is sufficient. It's not perfect, but it's sufficient. And the real motivation, I think, for the board saying all these things about substantial evidence again was this unreasonable position that pricing of a change order doesn't count in terms of recovery. Summarize, Your Honors. We shouldn't really be here before the Federal Circuit. This should have been settled and negotiated long ago. Unfortunately, the government has taken unreasonable positions at the contracting officer level. They took unreasonable positions at the board. The board violated Bill Strong, although the government isn't backing up the board on that now. And here we are. Here we are. Why is this contractor here? This should have been negotiated except for unreasonable government conduct. And for that reason, Your Honor, we respectfully request that we recover the small amounts that are involved here as a matter of principle. Thank you. Thank you, Mr. Gordon.